IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.: 9:10-CR-00817 |
| | ) | |
| vs. | ) | |
| | ) | |
| BLAIR WITKOWSKI | ) | |

**DEFENDANT'S MOTION FOR VARIANCE
FROM THE SENTENCING GUIDELINES**

The Defendant, Blair Witkowski, ("Defendant" or "Witkowski"), by and through his undersigned counsel, E. Bart Daniel, hereby respectfully moves for a downward departure and/or a variance from the United States Sentencing Guidelines ("Guidelines" or "USSG"). The request for a departure and/or variance is based on the following mitigating factors:

1. The defendant has provided extraordinary help to the United States;

2. The defendant has extraordinary family ties and obligations.

The defendant respectfully requests a hearing at sentencing and an opportunity to present evidence and oral arguments in support of the said motion for a downward departure from the Guidelines sentencing computation.

**I. INTRODUCTION**

The defendant, Witkowski, has been charged with one count of Conspiracy to Commit Bank Fraud. On September 27, 2010 Witkowski entered into a plea agreement with the United States by which he pled guilty to Count 1 of the Indictment, Conspiracy to Commit Bank Fraud, a violation of 18 U.S.C. § 1349.

1

## II. BACKGROUND

Witkowski married Jennfier Witkowski in June of 1997. They have seven children together: Casey, age 15, Rory, age 12, Liliana, age 9, Oliver, age 6, Rose, age 4, Jude, age 2, and Moses, age 10 months. Defendant is the sole owner of Broad River Auto Sales in Beaufort, SC. Defendant's wife is a homemaker who home schools three of the couple's children.

## III. MOTION FOR VARIANCE FROM THE SENTENCING GUIDELINES

The United States Sentencing Guidelines are now advisory, and the advisory guideline range is now but one of seven factors to weigh when formulating a sentence. United States v. Booker, 543 U.S. 220 (2005); 18 U.S.C. § 3553. In United States v. Booker, the Supreme Court held that the mandatory manner in which the Guidelines required courts to impose sentencing enhancements based on facts found by the court, by a preponderance of the evidence, violated the Sixth Amendment to the United States Constitution. The Supreme Court remedied the constitutional violation by severing two statutory provisions, 18 U.S.C. § 3553(b)(1) (requiring sentencing courts to impose a sentence within the applicable Guideline range), and 18 U.S.C. § 3742(e) (setting forth appellate standards of review for Guideline issues), thereby making the Guidelines advisory. Booker, 543 U.S. at 245. Although the Guidelines are no longer mandatory, Booker makes clear that a sentencing court must still "consult [the] Guidelines and take them into account when sentencing." Booker, 543 U.S. at 264.

Since the decision in Booker, the Fourth Circuit has instructed that a district court should first determine the appropriate sentencing range under the Guidelines, making all factual findings appropriate for that determination. See United States v. Hughes, 401 F.3d 540, 546 (4th Cir. 2005). Next, the court should consider this sentencing range, along with the other factors described in 18 U.S.C. § 3553(a), to impose a sentence. Id. If that sentence falls outside the

Guidelines range, the court should explain its reasons pursuant to 18 U.S.C. § 3553(c)(2). Hughes at 546. The sentence must be "within the statutorily prescribed range and . . . **reasonable**." Id. at 546-47 (emphasis added).[1]

After determining the appropriate advisory Guideline range, the second step is to determine the appropriate sentence (including the possibility of a variance) in consideration of the factors set forth in 18 U.S.C. § 3553(a), which provides:

> (a) Factors to be considered in imposing a sentence—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>   (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>   (3) the kinds of sentences available;
>   (4) the kind of sentence and the sentencing range established for—
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>       (i)   issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(1), subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under 28 U.S.C. § 994(p); and
>       (ii)  that, except as provided in § 3742(g) are in effect on the date the defendant is sentenced; or
>     (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(3), taking into account

---

[1] As at least one court has noted in this post-Booker era, "courts are free to disagree, in individual cases and in the exercise of discretion, with the actual range proposed by the guidelines, so long as the ultimate sentence is reasonable and carefully supported by reasons tied to the § 3553(a) factors." United States v. Ranum, 353 F. Supp. 2d 984 (E.D. Wis. 2005).

>    any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under 28 U.S.C. § 994(p);
> (5) any pertinent policy statement—
>    (A) issued by the Sentencing Commission pursuant to 28 U.S.C. §994(a)(2), subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under 28 U.S.C. § 994(p); and
>    (B) that, except as provided in § 3742(g), is in effect on the date the defendant is sentenced.
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The inquiry under § 3553(a) is broad-ranging. As the Fourth Circuit has observed, there is "essentially no limit on the number of potential factors that may warrant . . . a variance . . . ." United States v. Davenport, 445 F.3d 366, 371 (4th Cir. 2006). "Generally, if the reasons justifying the variance are tied to § 3553(a) and are plausible, the sentence will be deemed reasonable." United States v. McClung, 483 F.3d 273, 277 (4th Cir. 2006); United States v. Moreland, 437 F.3d 424, 433 (4th Cir. 2006). While the scrutiny of these factors may increase with the magnitude of variance (see McClung, 483 F.3d at 277), it is always important to remember that a sentence greater than necessary to achieve the goals of § 3553(a)(2) is unreasonable. See, e.g., 18 U.S.C. § 3553(a); United States v. Shortt, 485 F.3d 243, 248 (4th Cir. 2007).

The first set of factors in section 3553(a)(1), the nature of the offense and the history and characteristics of the defendant, favor Witkowski because he is the sole financial provider for his wife and seven children. Although family circumstances are disfavored by the Sentencing Commission, it is also clear based on rulings that a factor disfavored by the Guidelines is not

excluded from consideration under §3553(a). See United States v. Munoz-Nava, 524 F.3d 1137, 1147-49 n. 6 (10th Cir. 2008) (citing Gall v. United States, 552 U.S. 38 (2007)).

Witkowski has extraordinary family ties because he provides the sole income for his household which includes his wife, seven minor children, and himself. The length of Witkowski's sentence will directly affect the financial hardship that will visit his family in his absence because Witkowski is the sole financial provider in his family. Jennifer Witkowski, Defendant's wife expressed her fear about her husband's prolonged absence from the family by stating: "I am not sure how we would survive, except to fall on the mercy of family, friends and society at large." See Exhibit A, Letter from Jennifer Witkowski dated January 18, 2011. The Witkowski children range from ages 1 to 15 and Jennifer Witkowski home schools three of these children. See Exhibit A, Photograph of the Witkowski family dated January 2010. The youngest three are under the age of 5. Without the defendant's income, his wife will have to seek work; however, as her parents stated in their letter to the court: "it would be virtually impossible for her to raise those children and work outside [the] home." See Exhibit H, Letter from Ronald and Mary Angner dated January 16, 2011.

Apart from the severe financial cost associated with Witkowski's absence, his family will suffer mentally and emotionally. Witkowski's 15-year old daughter, Casey, worries about the important moments in her and her siblings' lives that her father will miss as the result of his prison sentence. See Exhibit O, Letter from Casey Witkowski dated January 19, 2011. The length of Witkowski's absence from his family will create a severe emotional, physical, and financial hardship on his innocent wife and children especially considering the close-knit nature of the family and the active role of Blair Witkowski in the family.

The second set of factors in § 3553(a)(2)(A)-(D) addresses several traditional sentencing considerations.

In this case, Witkowski has pled guilty to the non-violent Class B felony of conspiracy to commit bank fraud and through his actions has demonstrated that there is no indication of a need to protect the public from further criminal conduct by the defendant. In fact, Defendant has abided by all laws since being confronted by law enforcement about the subject wrongful conduct.

Significantly, immediately after obtaining legal representation on August 14, 2008, Witkowski began co-operating with federal authorities to try his best to assist however possible. The extensive co-operation lasted for more than thirty months and has continued to this day. This co-operation has included countless hours of meeting with federal law enforcement and assistant United States' Attorneys in this District as well as others. As a result of Witkowski's cooperation, the United States Attorney's Office in New Jersey is prosecuting at least five of Witkowski's co-conspirators, including Witkowski's father.

Along with cooperating with federal agents and prosecutors, Witkowski has been assisting Carolina First in their civil cases in order for the company to recover money which it lost due to the illegal activity of Witkowski and other's conduct. See Exhibit A. The attorney for the victim, TD Bank (formerly Carolina First), describes Witkowski's co-operation in helping the bank understand how the acts in question occurred and who was involved besides Witkowski. See Exhibit P Letter from Thomas McGee III dated February 25, 2011.. According to the bank's counsel, Witkowski is the **only** participant to help TD bank and Witkowski has provided "truthful assistance." Id.

6

Admitting to his crime and cooperating with federal authorities illustrate that Witkowski has recognized that his actions were wrong. Defendant has shown respect for the law by helping to build cases against his co-conspirators and aiding Carolina First in recovering money lost in part to Witkowski's subject wrongful conduct.

The third factor in §3553(a)(3), the types of sentences available, encourages the court to consider sentencing options. Here, the extraordinary family ties and obligations of Witkowski and his attempts to rectify the situation created by his subject wrongful conduct lend support to Witkowski serving half of his sentence in a supervised release program. Allowing Witkowski to serve a portion of his sentence in supervised release will enable him to continue to co-operate with the victim, Carolina First and attempt to begin making restitution. See Exhibit A, id. Also, serving a portion of his sentence in supervised release will allow Witkowski, the sole financial provider for his wife and seven minor children, to work and support his family.

The fourth and fifth factors in § 3553 (a)(4)-(5) require the court to consider the Sentencing Guidelines and Policy Statements applicable to the case. In this instance, § 2B1.1 is the applicable guideline. Section 2B1.1 is designed to punish theft and does so, in part, through a sliding scale of loss to the victim. Witkowski respectfully requests that a portion of his sentence served under supervised release is appropriate and necessary in his situation based upon his extensive co-operation with federal authorities and Carolina First. The emotional, physical, and financial support provided by Witkowski to his family every day also support his request for a portion of his sentence to be served under supervised release.

The sixth factor in § 35553(a)(6) focuses on sentencing disparity among similarly situated defendants. Providing a sentence which would allow Witkowski to serve a portion in supervised release will not cause unwarranted sentencing disparity issues to arise in future cases

because the sentence here should be limited to the circumstances of the case. Witkowski's cooperation with both the federal government and the victim along with his extraordinary family obligations are factors and circumstances unique and limited to this case.

## CONCLUSION

Based on the foregoing authorities and the evidence presented, the defendant respectfully requests that the court impose a sentence in which a portion may be served under supervised release.

Respectfully Submitted:

/s/ E. Bart Daniel
E. BART DANIEL, ESQUIRE
Federal ID #: 403
Seven State Street
Charleston, South Carolina 29401
(843) 722-2000

Charleston, South Carolina
January 24, 2011